UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RONA SILKISS,

          Plaintiff,

    v.

RICHARD H. LEE, et al.,

          Defendants.

Case No. 18-cv-00682-JSW

**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION**

Re: Dkt. No. 10

Now before the Court is defendants' motion to compel arbitration. The Court has considered the parties' papers, relevant legal authority, and the record in this case, and the Court finds the motion suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). For the reasons set forth below, the Court HEREBY GRANTS defendants' motion to compel arbitration.

**BACKGROUND**

EyeMD LP is a limited partnership that owns and operates EyeMD Laser Surgery Center, a fully accredited ophthalmological surgery center in Oakland, California. (Dkt. No. 10-1 (Declaration of Dr. Richard H. Lee, Jr., MD ("Lee Decl.") ¶¶ 3-4.) EyeMD LP was formed on or about January 1, 2000 through the execution of the written Limited Partnership Agreement of EyeMD LP ("Agreement") by its general partner, GP EyeMD, Inc. and the founding limited partners. (*Id.* ¶ 3; Dkt. No. 10-1 (Agreement) at p. 1, 37, 38[1].) GP EyeMD, Inc. is a corporation Dr. Lee owns and controls. (Lee Decl. ¶ 6.)

Section 10.1 of the Agreement ("Dispute Resolution; Confidentiality") states:

---

[1] References and cites to the Agreement will be alternately to page numbers and sections, depending on which is appropriate.

United States District Court
Northern District of California

Any controversy, dispute or claim ("Claim") between any Limited Partner and the Limited Partnership, between Partners or between the General Partner and the Limited Partnership, *arising out of or relating to this Agreement or the Limited Partnership*, *whether arising in contract or tort, law or equity*, shall be subject to a non-binding mediation, and if not then resolved, shall be finally determined by a binding arbitration, both conducted as set forth below. . . .

(Agreement at § 10.1 (emphasis added).)  Section 10.3(a) of the Agreement ("Arbitration") states: "In the event any Claim is not fully resolved by mutual agreement of the parties to the dispute at the Mediation, the Claim shall be finally determined by a binding arbitration ("Arbitration"), conducted by a single arbitrator chosen by the parties as described below. . . ."  (*Id.* at § 10.3(a).)

Dr. Rona Silkiss, M.D., is an ophthalmologist who owns five of the ninety limited partnership units in EyeMD LP currently outstanding.  (Lee Decl. ¶ 11.)  She was one of the founding limiting partners of EyeMD LP and signed the Agreement on or about January 1, 2000.  (*Id.*)

In 2017, EyeMD LP signed a letter of intent regarding a proposed acquisition by a Northern California third-party hospital system.  (*Id.* ¶¶ 13-15.)  Before the transaction could proceed, however, EyeMD LP was required to convert to a limited liability company, and any dissenting partners to this conversion had to waive their dissenters' rights.  (*Id.* ¶¶ 14, 15.)  Dr. Silkiss voted against the conversion, exercised her dissenter rights, and demanded that EyeMD LP repurchase her interest in the partnership.  (*Id.* ¶ 16.)  In October of 2017, Dr. Silkiss, invoking the arbitration clause of the Agreement, requested mediation of her request that the partnership purchase her interests.  (*Id.* ¶ 17.)

Neither the conversion nor the acquisition took place.  (*Id.* ¶¶ 18, 19.)  Yet, after the conversion was cancelled, Dr. Silkiss still wanted EyeMD LP to repurchase her interest.  (Dkt. No. 10-2 (Declaration of Scott C. Kessenick ("Kessenick Decl."), Ex. B, Nov. 7, 2017 email from D. Rosenberg-Wohl to S. Kessenick).)  In a letter, Dr. Silkiss wrote that "mediation is the appropriate first step under the parties' agreement to resolve the dispute."  (*Id.*)  Subsequent communication between EyeMD LP and Dr. Silkiss also referenced the possibility of arbitration.  (Kessenick Decl., Ex. C (Nov. 9, 2017 email from D. Rosenberg-Wohl to S. Kessenick).)

The parties participated in mediation before JAMS neutral John Bates on December 11,

2017.  (Lee Decl. ¶ 19.)  The mediation was unsuccessful in resolving the parties' dispute.  (*Id.*)  Dr. Silkiss filed the above-captioned action in federal court on January 31, 2018.  (Dkt. No. 1.)  The complaint contains allegations relating to the partnership and misconduct by Dr. Lee as general partner.  (*See generally id.*)  Dr. Silkiss seeks: (i) "the forced sale of her shares at market value;" (ii) the recovery of "the economic delta between any ostensible market price for her shares and their value if sold as part of majority control;" (iii) the "full array of damages available for sex discrimination" due to her exclusion from the abandoned transaction; (iv) the removal of Dr. Lee as "managing partner;" (v) dissolution of the partnership; and (vi) an accounting.  (*Id.* ¶ 11.)

## ANALYSIS

### A.    Applicable Legal Standards.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, enacted "in response to widespread judicial hostility to arbitration agreements," requires the rigorous enforcement of arbitration agreements.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted).  The primary substantive portion of the FAA states: ". . . [A] contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Accordingly, arbitration agreements may be invalidated by generally applicable contract defenses such as fraud, duress, or unconscionability.  *AT&T*, 563 U.S. at 339.

"The FAA's purpose is to give preference (instead of mere equality) to arbitration provisions."  *Mortensen v. Bresnan Commc'ns LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013).  Due to the policy of favoring arbitration, a party who challenges the enforceability of an arbitration agreement bears the burden of proving the provision is unenforceable.  *Id.* at 1157.  A district court's role under the FAA is to (i) determine whether a valid agreement to arbitrate exists and, if it does, (ii) to determine whether the agreement encompasses the dispute at issue.  *Id.* (citations omitted).  The party moving to compel arbitration bears the burden of proof for both prongs.  *See Hotels Nevada v. L.A. Pac. Ctr., Inc.*, 50 Cal. Rptr. 3d 700, 705 (Cal. Ct. App. 2006).  If a valid arbitration agreement exists and it encompasses the dispute at issue, then the court must enforce

3

the arbitration agreement according to the agreement's terms. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quotation omitted).

California contract law controls whether an agreement to arbitrate exists and whether the agreement is enforceable. *See Gonick v. Drexel Burnham Lambert, Inc.,* 711 F.Supp. 981, 986 (N.D. Cal. 1988) (confirming that "arbitration agreements . . . are enforceable unless the agreements are invalid under [state] law governing the formation of contracts in general"). Under California law, a viable contract requires (i) parties capable of contracting, (ii) the parties' consent to contract, (iii) a lawful objection, and (iv) sufficient cause or consideration. Cal. Civ. Code § 1550. Under California law, courts may refuse to enforce any contract (including arbitration agreements) found "to have been unconscionable at the time it was made." Cal. Civ. Code §§ 1281, 1670.5(a).

Dr. Silkiss does not contest Dr. Lee's standing to move to compel arbitration. *See Rogers v. THD At-Home Servs., Inc.*, No. 14-cv-2069-JGB, 2015 WL 12862912, at *3 (C.D. Cal. July 1, 2015) ("[W]hen 'a plaintiff alleges a defendant acted as an agent of a part to an arbitration agreement, the defendant may enforce the agreement even though the defendant is not a party thereto."). She further does not contest that the FAA applies to the Agreement or argue that the dispute falls outside of the Agreement's reach. Dr. Silkiss argues only that Dr. Silkiss did not agree to arbitrate and that the Agreement is unconscionable and therefore unenforceable under California state law. The Court disagrees with both positions.

**B.      Dr. Silkiss Agreed to Arbitrate.**

Dr. Silkiss presents variations of argument on a single theme: she did not understand the meaning or effect of what she was signing. These assertions do not persuade the Court. First, it is black letter law that parties are presumed to understand the contents of the documents they execute. *Bingham v. Holder,* 637 F.3d 1040, 1045 (9th Cir.2011) (citing 27 Richard A. Lord, *Williston on Contracts* § 70:113 (4th ed. 2009)); *see also Operating Eng'rs Pension Trust v. Cecil Backhoe Serv., Inc.*, 795 F.2d 1501, 1505 (9th Cir.1986) ("A party who signs a contract is bound by its terms regardless of whether he reads it or considers the legal consequences of signing it."); *Stewart v. Preston Pipeline Inc.,* 36 Cal. Rptr. 3d 901, 921 (Cal. Ct. App. 2005) (under California

4

law, a party is bound by a contract, even if the party failed to read or understand the terms of the agreement before signing it).  Dr. Silkiss's arguments that she did not "anticipate" the consequences of the Agreement or that she did not understand, for example, what JAMS was, are not persuasive.

Further, in support of her argument that Dr. Silkiss did not agree to arbitrate, Dr. Silkiss claims that she cannot be required to arbitrate because the rules for arbitration were not "clear and unmistakable."  Yet, this standard applies only to an arbitration agreement's statement of the arbitrator's jurisdiction.  In other words, the "clear and unmistakable" rule applies to a determination of whether the parties have agreed that the arbitrator, rather than the court, determines whether the parties agreed to arbitrate, *not* the determination of whether the parties have agreed to arbitrate.  *See Gilbert St. Developers, LLC v. La Quinta Homes, LLC*, 94 Cal. Rptr. 3d 918, 921-25 (2009).  This is perhaps a confusing distinction, but it is an important one, as the issue of whether the parties delegated determination of arbitrability to an arbitrator is not before the Court.

Dr. Silkiss has not indicated she was incapable of contracting, that the contract had an unlawful object, or that there was insufficient consideration.  Dr. Silkiss admits that she signed the Agreement.  There is no information in the record to suggest that EyeMD LP obtained her signature by fraud.  Dr. Silkiss agreed to arbitrate.

**C.      Dr. Silkiss Has Not Shown She Is An Employee of The Limited Partnership.**

The overwhelming majority of the cases that Dr. Silkiss cites (for a variety of arguments) concern factual situations where unequal bargaining power is apparent from the nature of the relationship: employee-employer, franchisee-franchisor, borrower-financial institution, consumer-company.  These are circumstances where the discrepancies between the parties' sophistication, need, and knowledge were key factors in the courts' determinations of procedural and substantive unconscionability.

Here, Dr. Silkiss has provided the Court with no evidence to suggest that her relationship to the partnership mimics these lopsided pairings, and Dr. Silkiss's suggestion that her partnership

is name-only are belied by the materials before the Court.[2]  Dr. Silkiss may have legitimate grievances regarding the partnership, the way it was run, and the way the partnership (or Dr. Lee) treated her, and these factors may have deprived her of the influence and power she perhaps should have had over the partnership, but those problems accrued well after the execution of the Agreement and therefore have no bearing on whether the arbitration clause is unconscionable or unenforceable.

The Court need not wade too far into the bog of employee-status-related arguments presented by counsel for one simple reason: Dr. Silkiss has presented no evidence that she was an employee of the partnership.  Rather, the record before the Court demonstrates solely that Dr. Silkiss is a limited partner and an investor un involved in the day-to-day operations of the partnership.  (Lee Decl. ¶¶ 11-12; Dkt. No. 15-1 (Declaration of Dr. Rona Silkiss ("Silkiss Decl.")) ¶¶ 2, 5, 6.)  For the sake of precision, the Court notes that, in a variety of contexts, the determination of employee status is a fact-specific inquiry.  *See, e.g., Strother v. S. California Permanente Med. Grp.*, 79 F.3d 859, 865–68 (9th Cir. 1996), *as amended on denial of reh'g* (Apr. 22, 1996), *as amended on denial of reh'g* (June 3, 1996) (collecting cases).  Accordingly, the label of "partner" does not necessarily foreclose employee status.  Rather, a "partner's" employee status will depend upon the nature and size of the partnership, the partner's duties with respect to the partnership, and the power the partnership or organization has over the particular individual.  *See id.*  Here, Dr. Silkiss does not offer facts to suggest she was anything other than a limited partner.  *See Performance Team Freight Sys., Inc. v. Aleman*, 194 Cal. Rptr. 3d 530, 536–37 (2015) (party opposing motion to compel arbitration did not satisfy burden of presenting evidence of employee status).  To the extent Dr. Silkiss's opposition arguments depend upon her status as an employee of the partnership, those arguments are unavailing.

---

[2] For example, the Agreement demonstrates that there were fifteen limited partners, with shares of interest ranging from 13.286% (Dr. Lee) to 2.857% (two limited partners).  (Agreement at p. 39-40.)  Dr. Silkiss's share is 5.714%—the same as that of two other limited partners.  (*Id.*)  Apart from arranging for reimbursement for medical services she provided at the partnerhsip's facility, Dr. Silkiss did not do work for the partnership.  (*See generally* Silkiss Decl.)  Under the terms of the Agreement, she had the ability to vote on matters of partnership governance.  (Agreement at 5.3.)

United States District Court
Northern District of California

**D.    Agreement Is Neither Procedurally Nor Substantively Unconscionable.**

Under California law, Dr. Silkiss bears the burden of establishing the Agreement is unconscionable by a preponderance of the evidence. *Engalla v. Permanente Med. Group, Inc.*, 938 P.2d 903, 915-16 (Cal. 1997) (party opposing the petition to compel arbitration bears burden of proving by a preponderance of evidence any fact necessary to its defense). The Court must first inquire into whether the contract is one of adhesion. *Lennar Homes of California, Inc. v. Stephens*, 181 Cal. Rptr. 3d 638, 650 (Cal. Ct. App. 2014) (quotation and citation omitted). A contract of adhesion "is a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id.* (citation and quotation omitted). If a contract is indeed adhesive, a court must next determine whether other factors are present to render the contract unenforceable as unconscionable. *Id.*

For a contract to be unconscionable under California law, it must be both procedurally and substantively unconscionable. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (Cal. 2000) (citations omitted). Procedural unconscionability means that there is "oppression" or "surprise" due to unequal bargaining power. *Id.* An agreement is substantively unconscionable where the results of the agreement are overly "one-sided" or "harsh." *Id.* While both procedural and substantive unconscionability must be present for a court to find a contract unenforceable, it is not necessary that both forms of unconscionability be present to the same degree. *Stirlen v. Supercuts, Inc.,* 51 Cal. App. 4th 1519, 1532 (Cal. Ct. App. 1997) (citations omitted). Courts therefore apply a sliding scale: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to find unenforceability, and vice versa. *Id.* (citations omitted).

Dr. Silkiss states in her declaration that the Agreement was offered to her on a take-it-or-leave-it basis. (Silkiss Decl. ¶ 3.) This alone does not satisfy her burden. *See McQueen v. Chevron Corp.*, No. 16-cv-2089-JSW, 2017 WL 6451803, at \*4 (N.D. Cal. Dec. 18, 2017) (assertion that contract offered on take-it-or-leave-it basis conclusory and, without more, did not give rise to finding or procedural unconscionability). There is nothing before the Court to suggest

unequal bargaining strength among the partners who executed the agreement (*see* Silkiss Decl. ¶ 3), and the Agreement lacks the common indicia of an adhesive contract. *See, e.g., Little v. Auto Stiegler, Inc.*, 63 P.3d 979, 983–84 (Cal. 2003) ("In the case of preemployment arbitration contracts, the economic pressures exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." (citation omitted).).

Even if the Agreement were adhesive, Dr. Silkiss would have to demonstrate undue surprise or oppression and substantive unconscionability. Dr. Silkiss's sole procedural unconscionability argument is that the Agreement is "murky" in its references to the rules that would apply in the event of an arbitration, which she contends constitutes undue surprise and oppression. The Court disagrees.

The Agreement explicitly states:

> *Except as expressly modified herein*, the Arbitration shall be conducted in accordance with the provisions of Section 1280 *et seq.* of the California Code of Civil Procedure, or their successor sections ("CCP"), and shall constitute the exclusive remedy for the determination of any Claim, including whether the claim is subject to arbitration. *The Arbitration shall be conducted under the procedures of the Arbitration Tribunal, except as modified herein.* The Arbitration Tribunal shall be [Judicial Arbitration and Mediation Services] JAMS, unless the parties to the dispute cannot agree on a JAMS arbitrator, in which case the Arbitration Tribunal shall be the San Francisco Office of the American Arbitration Association ("AAA").

(Agreement at 10.3(b) (emphasis added).) According to the Agreement, California Civil Procedure section 1280 and subsequent sections govern unless expressly modified. Then the Agreement proceeds to "expressly modify" CCP's applicability by invoking the governance of the appropriate "Arbitration Tribunal" rules, which in turn are "expressly modified" by other clauses in section 10.3 of the Agreement. This structure is perhaps somewhat unwieldy, but it is not unduly surprising or oppressive. Finally, the Agreement is clear that JAMS Rules will apply if the parties agree on a JAMS mediator and AAA rules will apply if the parties do not.

It is true that the Agreement does not on its face specify which version (temporal or

substantive) of JAMS or AAA rules will apply.  Yet, both JAMS and AAA rules themselves contain provisions indicating the set of rules that apply when the parties fail to identify a particular set of rules in in the arbitration agreement.  *See Dastime Grp. Ltd. V. Moonvale Investments, Ltd.*, No. 17-cv-1859-JSW, 2017 WL 4712179, at *5 (N.D. Cal. Oct. 11, 2017) (JAMS); *Perez v. Maid Brigade, Inc.*, No. 07-cv-3473-SI, 2007 WL 2990368, at *6 n.6 (N.D. Cal. Oct. 11, 2007) (AAA). When an agreement references a set of rules without specifying which version of those rules should apply, but "the referenced rules themselves answer that question, those rules control." *Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125, 1132 (C.D. Cal. 2006).

The JAMS and AAA rules Dr. Silkiss submits in support of her motion specify which sets of rules control.  (*See* Dkt. No. 15-2 (JAMS Comprehensive Arbitration Rules & Procedures, Rule 1(a), (b), 3 and AAA Commercial Arbitration Rule R-1(a) and (b)).)[3]  The Agreement's failure to specify particular governing rules therefore does not render the Agreement's arbitration clause procedurally unconscionable.  Likewise, the failure to attach arbitration rules to the Agreement is not evidence of procedurally unconscionability.  *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1262 (9th Cir. 2017) (no procedural unconscionability where AAA Rules incorporated by reference into arbitration agreement).

Dr. Silkiss relies heavily upon *Trivedi v. Curexo Tech. Corp.*, 116 Cal. Rptr. 3d 804 (Cal.

---

[3]    Dr. Silkiss submits three JAMS documents in support of her opposition: (i) JAMS Comprehensive Arbitration Rules & Procedures ("Comprehensive Rules"), (ii) JAMS Recommended Arbitration Discovery Protocols for Domestic Commercial Cases ("Discovery Protocols"), and (iii) JAMS Employment Arbitration Rules ("Employment Rules").  The second document is unlike the first and third—the Discovery Protocols contains discovery guidelines rather than a separate set of situationally-specific arbitration rules, which are contained in the Comprehensive Rules and the Employment Rules.  The Comprehensive Rules references (and, to an extent, partially incorporates) the guidelines contained in the Discovery Protocols.  Finally, it is not at all clear to the Court that the Employment Rules would govern the instant dispute because these Rules are limited to cases that are "employment-related" and, based on the record before the Court, this case is not an employment dispute.
Dr. Silkiss also submits two AAA documents in support of her opposition: (i) Large Complex Commercial Disputes Procedures with Commentary and (ii) Commercial Arbitration Rules and Mediation Procedures, Including Procedures for Large, Complex, Commercial Disputes.  The second document appears to incorporate and update the first document entirely. (*See* Dkt. 15-2 p. 122-125.)  The first document contains additional commentary on the rules in order to elucidate their meaning.  Given the fact that AAA has a rule specifying which temporal version of a particular type of rule governs, the Court does not see any cause for confusion.  (*See* AAA Commercial Arbitration Rules R-1(a) and (b).)

9

United States District Court
Northern District of California

Ct. App. 2010) to support her argument that incorporating terms by reference without providing a copy is procedurally unconscionable. Yet, in *Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 12–13 (Cal. 2016), the California Supreme Court disproved of *Trivedi* and clarified that incorporating rules by reference (and failing to provide a copy of the rules) catalyzed only heightened scrutiny for the substantive unconscionability of "artfully hidden" terms. In other words, incorporating rules by reference directs a court to examine the incorporated rules *themselves* for elements of unconscionability. There is nothing before the Court to suggest that either JAMS or AAA rules are substantively unconscionable, as discussed in greater detail below.

Dr. Silkiss has not met her burden to prove procedural unconscionability by a preponderance of the evidence. Although her failure to establish procedural unconscionability makes examination of substantive unconscionability unnecessary, the Court similarly finds Dr. Silkiss has failed to meet her burden on this element as well.

First, the Court disagrees with Dr. Silkiss's contention the Agreement is "murky" as to which arbitration rules apply. As discussed above, the Agreement explains that JAMS rules are to apply if the parties agree to a JAMS mediator, and AAA rules are to apply if the parties do not agree to a JAMS mediator. The JAMS and AAA rules themselves dictate which set of rules will apply to the arbitration of this case. There is no evidence before the Court to suggest that the defendants will be able to change the arbitration rules on a whim, as Dr. Silkiss suggests, or that the arbitration rules themselves are inequitable.

Further, the cases Dr. Silkiss cites in support of her "murkiness" argument are distinguishable. In *Macias v. Excel Bldg. Servs. LLC*, the district court found the arbitration agreement substantively unconscionable (in part) because the agreement granted one party the power to change the terms of the agreement at any time without providing notice. 767 F. Supp. 2d 1002, 1009–10 (N.D. Cal. 2011) (employer-employee contract). Here, the only contingency mandating rule change in the Agreement is whether the parties agree to a JAMS mediator. Moreover, in *Macias*, the party with the greater bargaining power had the practical ability to initiate certain disputes in court, avoiding arbitration entirely, while the agreement required all potential claims from the subordinate party (an employee) proceed to arbitration. In *Patterson v.*

10

*ITT Consumer Fin. Corp.*, the court found that an arbitration agreement was unconscionable where the rules for arbitration were not attached to the agreement. 18 Cal. Rptr. 2d 563 (Cal. Ct. App. 1993). There, however, the arbitration forum (the National Arbitration Forum in Minneapolis) presented geographic accessibility issues and, further, as defendants correctly point out, the case hails from a time before the internet made the information incorporated by reference easily accessible.

Dr. Silkiss next argues that the Agreement deprives her of necessary discovery rights. Yet, "the fact than an arbitration may limit a party's discovery rights is not 'substantive unconscionability.'" *Coast Plaza Doctors Hosp. v. Blue Cross of California*, 83 Cal. App. 4th 677, 689-90 (Cal. Ct. App. 2000). Streamlined and more limited discovery is a feature of nearly every arbitration. *See id.* Indeed, as discovery is one of the most expensive and time-consuming phases of litigation, a streamlined discovery process is one of the reasons arbitration remains an attractive option for parties.[4]

It is true that excessively restrictive discovery, even if the rules facially constrain both parties equally, can operate unfairly, but Dr. Silkiss has not met her burden of demonstrating that the discovery procedures in the Agreement are unfair. There is certainly nothing here so one-sided here that it "shocks the conscience," which is what a finding of substantive unconscionability requires. *See Coast Plaza*, 83 Cal. App. 4th at 689-90 (no substantive unconscionability where no "shock" to the conscience).

Dr. Silkiss next argues that the Agreement abridges her statutory rights to bring discrimination claims. The Agreement, however, does not foreclose such claims. (*See* Agreement at 10.1.)[5] Moreover, it is not substantively unconscionable to award attorneys' fees to the

---

[4] Again, the cases Dr. Silkiss cites in support of her argument that an arbitration agreement that limits discovery is unconscionable are all cases concerning arbitration agreements between employees and employers. *See Armendariz*, 24 Cal. 4th at 83; *Ferguson v. Countrywide Credit Indust., Inc.*, 298 F.3d 778 (9th Cir. 2002); *Martinez v. Master Prot. Corp.*, 118 Cal. App. 4th 107 (Cal. Ct. App 2004); *Fitz v. NCR Corp.*, 118 Cal App. 4th 702 (Cal. Ct. App. 2004). As this Court has already explained, Dr. Silkiss has not shown by a preponderance of the evidence that she was an employee of the partnership.

[5] Once again, the cases Dr. Silkiss relies upon are distinguishable because they occur in the

prevailing party in arbitration, where the attorneys' fees clause applies to both parties, as here. *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1024-26 (9th Cir. 2016) (applying California law to contract between customer and company); (*see* Agreement at 10.3(g), 11.2). Likewise, as Dr. Silkiss has not demonstrated she is an employee, the Agreement is not substantively unconscionable for requiring each party to bear its own costs. *See Pinnacle Museum Tower Ass'n v. Pinnacle Mt. Dev. (US), LLC*, 282 P.3d 1217, 1233-34 (Cal. 2012).

### CONCLUSION

For the reasons described above, the Court HEREBY GRANTS the motion to compel arbitration and STAYS this matter pending resolution of the dispute in arbitration. *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073-74 (9th Cir. 2014) (court has discretion to dismiss or stay action when court determines all claims subject to arbitration).

IT IS SO ORDERED.

Dated: November 19, 2018

_____

JEFFREY S. WHITE
United States District Judge

---

employee-employer context.

12